## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, ARISTA RECORDS LLC, RECORDS LABEL, LLC, and ZOMBA RECORDING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TRILLER, INC., <br><br> Defendant. | Civil Action No. 22-cv-7380 <br><br> **COMPLAINT** <br><br> TRIAL BY JURY DEMANDED |

Plaintiffs Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Arista Records LLC, Records Label, LLC, and Zomba Recording LLC (collectively, "Sony Music"), by and through their attorneys, for their Complaint against Defendant Triller, Inc. ("Triller"), allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as set forth below:

### NATURE OF THE ACTION

1.      This is a copyright infringement and contract action by Sony Music against Triller for Triller's willful and unauthorized use of Sony Music's copyrighted sound recordings in Triller's commercial social media service; and for Triller's failure and refusal to pay millions of dollars in contractual licensing fees that Triller agreed to pay for the use of Sony Music's copyrighted content in Triller's commercial service.

2.      Sony Music and its recording artists have been at the forefront of recorded music for over a century.  Sony Music produces, manufactures, distributes, sells, and licenses some of

1

the most iconic and popular sound recordings, by some of the most important recording artists of all time.  Through its enormous investments of money, time, and exceptional creative efforts, Sony Music and its representative recording artists have developed, marketed, and distributed some of the world's most famous and popular music both in the United States and internationally.  As a result of these efforts, Sony Music owns and/or controls exclusive rights to the copyrights in classic works ranging from Janis Joplin's "Summertime" and Run DMC's "It's Tricky," to contemporary hits such as Doja Cat's "Say So," Lil Nas X's "Old Town Road," Khalid's "Location," and 24kGoldn's "Mood," and countless other hits across generations.

3.    Sony Music works hard to ensure the widespread, authorized availability and enjoyment of its recorded music, including by licensing its sound recordings for use by others. When companies exploit Sony Music's sound recording for commercial benefit without authorization, neither Sony Music nor its artists see a dime.  Not only does this harm Sony Music and the artists by depriving them of compensation, but it harms the public at large by reducing the incentive to invest in the creation and dissemination of new music.

4.    Triller is the developer, distributor and operator of a "social media and music discovery experience" website and application, available at www.triller.co and on iOS and Android, respectively (collectively, the "Triller App").  The Triller App allows users to search for and pick a sound recording from Triller's audio library to listen to and include in "celebrity-quality music video[s] starring you and your friends."  These videos are then posted to the Triller App, allowing other users to stream or download the videos.  The Triller App "has more than 350 million downloads."  Triller's entire product, service and offering is built upon popular music, including Sony Music's copyrighted sound recordings, which Triller exploits through the Triller App and its videos.

5.      Triller is a sophisticated party that purports to take intellectual property rights seriously when it benefits Triller.  For example, in its Terms of Service, Triller defines its own intellectual property rights in the broadest manner possible, and requires its users to agree, as a condition of use, that any "unauthorized use of the [Triller's intellectual property] may violate copyright, trademark, privacy, publicity, communications, and other laws, and any such use may result in your personal liability, including potential criminal liability."

6.       Despite extolling the importance and value of "innovative technology and intellectual property," and claiming to hope that its efforts to curb copyright infringement "will set a precedent for us and all content creators going forward that stealing is not going to be tolerated," Triller displays brazen contempt for the intellectual property rights of Sony Music, its artists, and others.

7.      Recognizing the need for authorization to use Sony Music's sound recordings and the value of Sony Music's catalog, Triller entered into a content distribution agreement with Sony Music, effective September 1, 2016 (inclusive of all subsequent amendments, the "Agreement").  In exchange for a licensing fee and other consideration, Sony Music authorized, or agreed not to object to, Triller reproducing, distributing, publicly performing, creating derivative works, displaying, and otherwise exploiting Sony Music sound recordings, artwork, sound recording clips, user-created clips, and metadata (collectively, "Sony Music Content") through the Triller App, as detailed in Sections 4, 6 and 7 of the Agreement.

8.      In the past six months alone, Triller claims to have expanded extensively, acquiring the companies Julius and Fangage, and touting a surge in usage of the Triller App. Despite this self-proclaimed growth, Triller has failed and refused to make the required license payments to Sony Music under the Agreement.

9.      While Triller had historically failed to make payments in a timely manner under the Agreement, its failures recently escalated.  Starting in March 2022, Triller failed to make any monthly payments required under the Agreement, totaling millions of dollars.  Failure to pay the licensing fee is a breach of the Agreement.  After months of Sony Music requesting that Triller pay its outstanding and overdue fees, and near-total radio silence in response, Sony Music notified Triller on July 22, 2022 that it was in material breach of the Agreement.  After Triller failed to substantively respond, much less cure, its breach of the Agreement by making payment, Sony Music terminated the Agreement on August 8, 2022.  In doing so, Sony Music expressly informed Triller that its continued use of Sony Music Content would constitute willful copyright infringement.

10.     After Sony Music terminated the Agreement on August 8, 2022, Triller had no legal rights to use Sony Music Content on the Triller App.  Nevertheless, Triller has continued to reproduce, distribute, publicly perform, display, create derivative works, and otherwise exploit the valuable Sony Music Content in connection with the Triller App.

11.     Triller's conduct has caused and continues to cause substantial and irreparable harm to Sony Music and its artists, while enriching Triller at the expense of Sony Music and its artists.  By this lawsuit, Sony Music seeks damages for Triller's breach of the Agreement and its willful infringement of Sony Music's copyrights since the August 8, 2022 termination of the Agreement; and an injunction to stop Triller's massive, willful, and deliberate campaign of infringement of Sony Music's and it's artists valuable sound recordings.

## THE PARTIES

### Plaintiffs

12.     Plaintiff Sony Music Entertainment is a Delaware general partnership, the partners of which are citizens of New York and Delaware.  Sony's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York 10010.

13.     Plaintiff Sony Music Entertainment US Latin is a Delaware Limited Liability Company with its principal place of business at 3390 Mary Street, Suite 220, Coconut Grove, Florida 33133.

14.     Plaintiff Arista Records LLC is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

15.     Plaintiff Records Label, LLC is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

16.     Plaintiff Zomba Recording LLC is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

17.     Sony Music is one of the most important record companies in the world, engaged in the business of producing, manufacturing, distributing, selling, licensing, and otherwise commercializing sound recordings in the United States and the world through various media.  It invests substantial money, time, effort, and talent in creating, advertising, promoting, selling, and licensing unique and valuable sound recordings embodying the performances of its exclusive and world-class recording artists.

18.     Sony Music owns and/or is the exclusive licensee of the copyrights and/or exclusive rights in innumerable sound recordings, including the sound recordings listed on Exhibit A, which is an illustrative and non-exhaustive list of some of the many Sony Music

works infringed by Triller.  All of the sound recordings listed on Exhibit A have been registered, or filed pursuant to 17 U.S.C. § 1401, with the U.S. Copyright Office.

**Defendant**

19.     Defendant Triller, Inc. is a Delaware Corporation with its principal place of business at 2121 Avenue of the Starts, Suite 2320, Los Angeles, CA 90067.  Triller is registered with the New York Secretary of State's Office as an active business corporation in New York. Triller listed its business address in the Agreement, including for delivery of any required notice under the Agreement, as 133 West 19th Street 5A, New York, New York 10011.  According to Triller's website, it has an office in New York.

**JURISDICTION AND VENUE**

20.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. and breach of contract under New York law.

21.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, *et seq*., and 28 U.S.C. §§ 1331 and 1338, based on federal question jurisdiction, and 28 U.S.C. § 1367, based on the Court's supplemental jurisdiction.

22.     This Court has personal jurisdiction over Triller pursuant to § 301 of New York's Civil Practice Law & Rules.  Triller maintains an office in New York, employs individuals in New York, and has pervasive corporate ties to the state that are sufficient to justify the imposition of general jurisdiction in New York state.

23.     This Court also has personal jurisdiction over Triller pursuant to § 302 of New York's Civil Practice Law & Rules because, among other things: (a) Triller transacts business in New York, including providing the Triller App to individuals in New York; (b) Triller has

committed tortious acts within New York, including publicly performing, reproducing,

displaying, distributing and creating derivative works of Sony Music sound recordings to

individuals in New York; (c) Triller's breach of the Agreement and ongoing infringement of

Sony Music's copyrighted works causes injury to, and is directed at, Sony Music, which is

mostly domiciled in the state of New York; and (d) Triller consented in Section 19.11 of the

Agreement to exclusive jurisdiction of Courts in New York County, New York of any

controversies regarding the Agreement.

24.     Venue is proper in this district under 28 U.S.C. §§ 1391.  Venue is also proper in

this District because Triller waived any objection to venue in Courts in New York County, New

York in Section 19.11 of the Agreement.

## FACTUAL BACKGROUND

### Sony Music's Sound Recordings and Licensing Business

25.     Sony Music is home to some of the world's most distinguished record labels,

including Columbia Records, RCA Records, Sony Nashville, Arista Records, and Epic Records,

through which it contracts with its world-class artists.

26.     Sony Music's roster includes some of the world's most famous artists, spanning

over decades.  In addition to well-known artists, Sony Music invests heavily in signing and

developing new artists, and in marketing and promoting their recordings.

27.     Sony Music is, and at all times relevant to this proceeding was, the sole owner or

exclusive licensee of all right, title, and interest in and to the copyrights in the sound recordings

at issue.

28.     The copyrights in the sound recordings at issue are valid and are registered, or

filed pursuant to 17 U.S.C. § 1401, with the United States Copyright Office.

29.     Sony Music commercializes its sound recording copyrights through physical sales, digital distribution, and through licensing to third parties, among other ways.

30.     Licensing the use of sound recordings—including for use in internet-based media—is a substantial revenue driver for all music companies, including Sony Music, particularly over the last decade.

31.     For example, Sony Music regularly licenses its sound recordings for use by streaming companies and social media platforms, including but not limited to Spotify, Apple Music, TikTok, Instagram, Facebook, and YouTube.

32.     Those who use Sony Music's sound recordings, whether in streaming services, social media, commercials, videos, or otherwise, are obligated to follow copyright laws and obtain permission from Sony Music.

## Background and Function of the Triller App

33.     Triller operates the Triller App, a music discovery experience and video-sharing social media app first released in July 2015.  The Triller App has been downloaded over 350 million times worldwide.

34.     Users of the Triller App can search for Sony Music sound recordings from a music library created by Triller (the "Triller Audio Library"), which is created from copies of copyrighted sound recordings and cover art obtained from Sony Music and other content owners. Each Sony Music-owned or controlled sound recording in the Triller Audio Library was delivered to Triller by or on behalf of Sony Music, and Triller is aware that Sony Music owns and controls each of those sound recordings.

35.      From the Triller Audio Library, users can discover music.  Triller streams each sound recording in the Triller Audio Library to users of the Triller App.  The Triller Audio

Library displays copyrighted cover art associated with sound recordings.  The Triller App also curates lists of sound recordings in the Triller Audio Library that are "New Releases," "Top Picks," and "#Viral."  Users can also search the Triller Audio Library by artist or sound recording title.

36.     After selecting a Sony Music sound recording to serve as background music for the user's video, the user can select which portion of the sound recording they want to play during their video, edit the video, and add filters.  Triller's software copies and distributes a copy of the Sony Music sound recording to the user for use in the user's video.  The video is then uploaded to the user's Triller page and can also be saved on the users' computer or device.

37.     Once uploaded, a video with the Sony Music Content can be streamed to others on the Triller App, online, or on third-party social media platforms.  Users of the Triller App can also download other users' videos, including Sony Music's Content and sound recordings, and send a copy of videos to others by email or multimedia message service.

38.     Videos on the Triller App are also organized by the sound recording embodied in the video, making it easy for a user to identify the sound recording, view other videos with the same sound recording, and make their own video using the same sound recording.  Triller keeps records tracking which sound recordings in the Triller Audio Library are incorporated into user videos, how often, when the videos are posted, and how many views each video receives.

**The Agreement**

39.     Recognizing the need for a license to exploit Sony Music sound recordings, Triller entered into the Agreement with Sony Music, effective September 1, 2016.  The parties amended the Agreement several times, including the Eleventh Amendment, which was signed in December 2021 and had an effective date as of December 1, 2020.

40.     The Agreement contained several promises, covenants, representations, and warranties from both Sony Music and Triller.  Among these, and relevant to this complaint, Sony Music granted Triller a non-exclusive, non-transferrable, non-delegable right to exploit Sony Music sound recordings in the specific, limited ways identified in Section 4.01 of the Agreement, and agreed not to object to Triller's use of Sony Music's Content in user-created videos in Section 4.02 of the Agreement.  In addition, in Section 5 of the Agreement, Sony Music agreed to deliver to Triller Sony Music Content for use in the Triller Audio Library and by Triller users as described in the Agreement.

41.     For its part, Triller agreed to pay a licensing fee to Sony Music in Section 6.01 of the Agreement.  Under the Eleventh Amendment, Section 6.01 required Triller to make an initial payment due at execution, followed by payments due on the first day of each month from March 1, 2022 through November 1, 2022.  Collectively, the licensing fee covered Triller's and its users' exploitation of Sony Music's Content under the Agreement for the period of December 1, 2020 through November 30, 2022, totaling millions of dollars.  To date, Triller has not paid any of the monthly payments due under the Eleventh Amendment.

42.     Not surprisingly, the Agreement makes clear that Triller's failure to make a timely payment constitutes a Default Event.  Section 1 of the Agreement defines a "Default Event" as: Triller's "failure to make timely payments required hereunder … which has not been cured by [Triller] within ten (10) business days of [Triller's]'s receipt of written notice thereof (email being sufficient)."

43.     Under Section 7.05, Triller is required to pay interest on any payment that is not made on or before its due date.

44.     The Agreement further provided in Section 13.01 that "[i]mmediately following the occurrence of any [Triller] Default Event…, in addition to any other rights and remedies which either Party may have under this Agreement or otherwise, the non-defaulting party may, upon written notice to the defaulting party, immediately terminate this Agreement and the Term."

45.     Section 7.01 and 7.03 of the Agreement also require Triller to provide Sony Music with certain monthly and weekly reports, on a specific schedule, containing detailed information about, among other things, the number of Triller users and activity involving Sony Music's sound recordings.  Under Section 7.01(b), as amended by the Eleventh Amendment, Triller is required to pay Sony Music certain non-recoupable, non-refundable Late Reporting Fees, as defined therein, for each month that Triller fails to timely deliver required reports.  Such Late Reporting Fees "shall not apply in reduction of, or be cross-recoupable against, the Fees set forth in Section 6.01(a) above, or any other fees or payments required to be made by Company hereunder."

46.     Section 13.02 of the Agreement provides that upon termination of the Agreement, (1) all rights granted to Triller under the Agreement immediately terminate, including the right to make use of any Sony Music Content, (2) Triller must immediately remove all references and links to any and all Sony Music Content from the Triller App , and (3) all amounts then due or to become due to Sony Music under the Agreement "become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by [Triller]."

47.     Triller also agreed in Section 19.07 of the Agreement that the Sony Music Content "has a special, unique and extraordinary character which gives it a peculiar value, and

11

that, in the event of a material breach of any term, condition, representation, warranty, covenant or agreement contained in this Agreement relating to the [Sony Music] Content, Sony Music may be caused irreparable injury, including loss of goodwill and harm to reputation, which cannot be adequately compensated in monetary damages."

### Default and Termination

48.     Despite signing the Eleventh Amendment in December 2021, Triller failed to make the first monthly payment to Sony Music, due on March 1, 2022.  Triller has failed to make each and every monthly payment due under the Agreement thereafter.  Triller also has not paid interest on overdue fees.

49.     During the exact same months that Triller was failing to make licensing payments to Sony Music, it went on a purchasing spree, announcing on March 28, 2022 the purchase of Julius, an influencer marketing software platform, and announcing on April 25, 2022 the purchase of Fangage, a platform for creators to host and sell content to their fans.  In the press releases announcing these acquisitions, Triller touted its app as an "open garden technology platform for creators," and highlighted the benefits the acquisitions would have for creators on Triller.  All the while, Triller neglected its payment obligations under the Agreement, preventing Sony Music from compensating its creators—the world-class performers and artists who created the sound recordings Triller incorporated into its users' videos—for Triller's use of their music.

50.     In response to Triller's failure to make payment due under the Agreement in March and April 2022, Sony Music contacted Triller in April 2022 inquiring when Sony Music could expect payment.  Triller stonewalled in response.  Though Triller's counsel indicated in May 2022, that Triller would "like to make payments in a few weeks, or by the end of June,"

Triller still has not done so.  Triller also failed to make any payment in May, June, July, or August 2022.

51.     On July 22, 2022, Sony Music sent Triller a formal Notice of Material Breach of the Agreement.  Sony Music notified Triller that it had materially breached the Agreement by failing to make the required payments due on March 1, 2022, April 1, 2022, May 1, 2022, June 1, 2022, and July 1, 2022.  Sony Music further advised Triller that failure to cure this material breach within ten business days would constitute a Default Event under the Agreement, pursuant to which Sony Music would be entitled to terminate the Agreement.

52.     Notwithstanding the formal notice and demand, Triller failed to make any payment in response to the Notice of Material Breach.  Accordingly, on August 8, 2022, Sony Music notified Triller via FedEx and email that the Agreement was terminated, and that any further use of Sony Music's Content by Triller would be, among other things, willful copyright infringement.

53.     Triller has also failed to satisfy its reporting obligations under the Agreement, including by failing to provide reports on the timeline and with the detail required under the Agreement.  For example, the limited reporting Triller provided does not include complete or consistent information on Triller activity involving Sony Music's sound recordings and the reporting Triller has provided is often late.

**Post-Termination Infringement**

54.     After Sony Music terminated the Agreement on August 8, 2022, Triller had and still has no license or authorization to exploit Sony Music Content on the Triller App. Nevertheless, Triller continues to exploit Sony Music Content on the Triller App, and these actions constitute willful copyright infringement.

55.     In particular, Sony Music Content provided to Triller in connection with the

Agreement remains available in the Triller Audio Library and continues to be streamed from the

Triller App and used in user videos.  Triller also continues to display copyrighted cover art for

Sony Music sound recordings on the Triller App.  For purposes of this Complaint, Sony Music

has identified a representative sample of 50 such sound recordings available in the Triller Audio

Library and confirmed that Triller publicly performed these sound recordings weeks after the

termination of the Agreement on August 8, 2022.

56.     Triller has also reproduced, distributed, and created derivative copies of Sony

Music's Content for incorporation into videos weeks after the termination of the Agreement on

August 8, 2022.

57.     Triller has also incorporated Sony Music sound recordings into Triller users'

videos, which Triller has distributed without authorization to Triller users who have saved such

videos weeks after the termination of the Agreement on August 8, 2022.  For purposes of this

Complaint, Sony Music has confirmed that Triller distributed videos containing unauthorized

copies of Sony Music's sound recordings weeks after Sony Music terminated the Agreement on

August 8, 2022.

58.     The sound recordings identified by Sony Music and referenced in paragraphs 55-

57 are illustrative and non-exhaustive exemplars, and are listed in Exhibit A ("the Recordings").

The full scope of Triller's infringement is unknown, and Sony Music anticipates amending

Exhibit A based on information learned in discovery.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Breach of Contract**

59.     Sony Music repeats and realleges each and every allegation above as if fully set

forth herein.

60.     Sony Music and Triller entered into a contract, the Agreement, as amended, as described above.

61.     As part of the Agreement, Triller agreed to make fee payments to Sony Music as set forth in Section 6.01 of the Agreement and interest payments on overdue payments under Section 7.03 of the Agreement.

62.     Triller has failed, without justification, to make any fee payments to Sony Music that were due on or after March 1, 2022 under Section 6.01 of the Agreement, or interest on overdue payments under Section 7.03 of the Agreement, constituting a Default Event under the Agreement.

63.     Triller failed to cure its default even after Sony Music provided notice of a Default Event.

64.     Sony Music has adequately and substantially performed all of its obligations under the Agreement.

65.     Triller has further breached the agreement by failing to remove all references and links to Sony Music Content from the Triller Audio Library and Triller App as required upon termination of the Agreement under Section 13.02 of the Agreement, which provision survives termination of the Agreement, pursuant to Section 13.03.

66.     Triller has breached the Agreement, causing Sony Music damages of at least the full amounts due under the Agreement.

**SECOND CAUSE OF ACTION**
**Copyright Infringement (17 U.S.C. § 101 *et seq.*)**

67.     Sony Music repeats and realleges each and every allegation above as if fully set forth herein.

68.     Sony Music owns and/or is the exclusive licensee of the copyrights and/or

exclusive rights in the Recordings, which are illustrative and non-exhaustive.  All of the sound

recordings listed on Exhibit A have been registered, or filed pursuant to 17 U.S.C. § 1401, with

the U.S. Copyright Office.

69.     By the acts set forth above, since at least August 8, 2022, Triller has infringed the

Recordings, including by performing them publicly by way of digital transmission without

authorization; by copying, distributing, and creating derivative works of the Recordings without

authorization for incorporation into videos, by displaying the cover art of the Recordings in the

Triller Audio Library, and by distributing the Recordings without authorization as part of a video

in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

70.     Each such infringement by Triller of the Recordings constitutes a separate and

distinct act of infringement.

71.     Triller's acts of infringement are willful, intentional, purposeful, and in disregard

of and indifferent to the rights of Sony Music.

72.     As a direct and proximate result of the infringements by Triller, Sony Music is

entitled to damages and to Triller's profits in amounts to be proven at trial, which are not

currently ascertainable.  Alternatively, Sony Music is entitled to statutory damages for each

copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

73.     Further, Sony Music is entitled to attorneys' fees and full costs pursuant to 17

U.S.C. § 505.

74.     As a result of Triller's conduct, and consistent with Triller's acknowledgement in

Section 19.07 of the Agreement, Sony Music has sustained and continues to sustain substantial,

immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless

enjoined and restrained by this Court, Triller will continue to infringe Sony Music's rights in the Sony Music Content.  Sony Music is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Triller's continuing infringing conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Sony Music respectfully requests a judgment in its favor and against Triller as follows:

A.  For a declaration that Triller breached the Agreement;

B.  For compensatory, actual, special, and liquidated damages for breach of the Agreement in an amount to be proven at trial, including payment of all fees, interest and late fees due;

C.  For a declaration that Triller willfully infringed Sony Music's copyrighted sound recordings;

D.  For an order enjoining Triller from further infringing upon Sony Music's copyrights, pursuant to 17 U.S.C. § 502;

E.  For an order pursuant to 17 U.S.C. § 503, requiring Triller to immediately destroy, delete or return all Sony Music Content provided to Triller under the Agreement;

F.  For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Triller's willful violations of Sony Music's rights under the Copyright Act; or, in the alternative, at Sony Music's election, Sony Music's actual damages pursuant to 17 U.S.C. § 504(b), including Triller's profits from infringement, in an amount to be proven at trial;

G.  For an award of Sony Music's costs and disbursements in this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

H.  For an award of pre-judgment and post-judgment interest, to the fullest extent

available, on any monetary award made part of the judgment against Triller; and

I.  For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Sony Music hereby respectfully demands

a jury trial on all issues so triable in this action.


Dated: August 29, 2022                                    OPPENHEIM + ZEBRAK, LLP

                                                                    /s/ Matthew J. Oppenheim
                                                                   Matthew J. Oppenheim
                                                                   Jeffrey M. Gould (*pro hac vice motion forthcoming*)
                                                                   4530 Wisconsin Avenue, NW, Fifth Floor
                                                                   Washington, DC 20016
                                                                   Tel:  202-480-2999
                                                                   matt@oandzlaw.com
                                                                   jeff@oandzlaw.com

                                                                   *Attorneys for Plaintiffs*