

Jeffrey M. Gould
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.851.4526
jeff@oandzlaw.com

**DELIVERED VIA ECF**

March 1, 2023

Honorable P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> **Re: *Sony Music Entertainment, et al. v. Triller, Inc.*, 1:22-cv-7380 (PKC): Letter Requesting Pre-Motion Discovery Conference**

Your Honor:

Pursuant to Local Rule 37.2, Plaintiffs Sony Music Entertainment, et al. ("Sony Music") respectfully request an informal conference with the Court regarding Triller Inc.'s ("Triller") refusal to produce any financial, marketing, or investing documents in response to Plaintiffs' Requests for Production. The next conference before the Court is currently scheduled for May 8, 2023 at 10:30 A.M. Dkt. 28, ¶ 15. Before filing this letter, the Parties met and conferred regarding these issues but were unable to resolve the dispute without Court involvement.

### I. Background

Sony Music asserts claims for breach of contract and copyright infringement against Triller, a social media app similar to TikTok that allows users to create videos using a library of popular music on Triller's website and app (the "Triller App"). After Triller failed to make millions of dollars of payments to Sony Music under a license agreement, Sony Music terminated the contract and has sued for breach and damages. Even after Sony Music terminated the license, Triller continued to use Sony Music's sound recordings without authorization on the

Triller App. Triller's use of Sony Music's sound recordings after that termination renders it willfully liable for direct and secondary copyright infringement.

## II. The Requests in Dispute and Triller's Response

Sony Music seeks certain financial information from Triller that is directly relevant to its claims and damages. In particular, Sony Music served six requests that seek, in relevant part, Triller's revenues and profits, financial or audit reports, investments in Triller, Triller's valuation, Triller's corporate ownership structure, and marketing materials (collectively, the "Requests").[1] Triller has refused to produce any of these documents in response to the Requests.[2] On February 21, 2023, the parties met and conferred via videoconference regarding

---

[1] The Requests as served are reproduced in full below:
Request 16: Documents sufficient to show your total and average revenues and profits, by month and year, including the source and any activity related to any such revenue.
Request 18: Documents sufficient to demonstrate your financial performance, including but not limited to regular corporate financial reports, audit reports, auditor letters, and any notes or supporting documents thereto.
Request 19: All marketing materials released to the public or delivered to actual or potential investors.
Request 20: Documents sufficient to show the timing and amount of any investments in Triller.
Request 21: Documents sufficient to show Triller's actual or potential valuation.
Request 24: Documents sufficient to show Triller's ownership structure, including any entities with common ownership.

[2] Triller's objection and response to Requests 16, 18, 20, and 21 is reproduced in full below:
Triller objects to this Request on the grounds that it seeks information not reasonably calculated to admissible discovery, is disproportionate in costs in consideration of the remaining issues in dispute and appears designed to harass Triller.

In response to Request 19, Triller agreed to produce marketing materials released to the public, but not to actual or potential investors. Triller's objection and response to Request 19 is reproduced in full below:
Triller objects to this Request on the grounds that it seeks information not reasonably calculated to admissible discovery and disproportionate in costs with respect to "[a]ll marketing materials released to the public or delivered to actual or potential investors." Subject to and without waiver of the foregoing objections, Triller will produce information responsive to this Request with respect to public marketing materials utilized by Triller that reference the use of Sony Music works on the Triller App.

Triller's objection and response to Request 24 is reproduced in full below:
Triller objects to this Request on the grounds that it seeks information not reasonably calculated to admissible discovery and disproportionate in costs in consideration of the remaining issues in dispute.

the Requests and other issues, and have discussed these issues further by email, but have been unable to reach a resolution regarding Triller's refusal to produce documents responsive to the Requests.

**III.	Triller's Financial Information is Critically Relevant to Sony Music's Claims**

The requested financial information is directly relevant to, Sony Music's claims for damages and vicarious liability, and Triller's factual assertion in its Answer that it is unable to pay Sony Music contractual amounts due under a now-terminated license agreement. Triller has not and cannot substantiate its conclusory proportionality claims.

***Damages***. The Copyright Act allows a copyright owner to recover actual damages and the infringer's profits, or, in the alternative, elect statutory damages. 17 U.S.C. § 504(a). The requested financial information is critical to either theory of damages.

*First*, on actual damages and infringer's profits, the Copyright Act makes clear that Plaintiffs can prove Triller's profits by presenting proof of Triller's gross revenue, and Triller may then attempt to show "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *See* 17 U.S.C. § 504(b). Without the information sought in Request 16 (total and average revenues and profits) and Request 18 ("Documents sufficient to demonstrate your financial performance, including … regular corporate financial reports, audit reports, auditor letters, and any notes or supporting documents thereto."), Sony Music will be incapable of proving Triller's revenue and testing the amounts that Triller may seek to deduct from such revenue to determine an award of profits.

*Second*, the information requested is essential to the statutory damages analysis. Courts have long held that statutory damages serve both compensatory and deterrence purposes. *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) ("The statutory rule … not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct."); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) ("Awards of statutory damages serve two purposes—compensatory and punitive.").

The jury must be permitted to understand the total wealth of the infringer to set an appropriate deterrent award. *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC,* 327 F. Supp. 3d 606, 634 (S.D.N.Y. 2018) (affirming statutory damage award and discussing instruction to jury that it may consider "Defendants' total profits"); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1545 (S.D.N.Y. 1991) (considering defendant's net income of $3 million and assets of $15 million in concluding that "substantial damages are necessary to deter [defendant] from repeating the conduct proved in this case"). Requests 16 (revenues and profits), 18 (financial and audit reports), 20 (investments in Triller), and 21 (valuation) are directed to Triller's central financial information so that Sony Music can analyze and the jury can assign a meaningful deterrent award in light of Triller's wealth.

***Vicarious liability***. Requests 19, 20, 21 and 24 also seek information essential to Sony Music's vicarious liability claim. To prove vicarious liability, Sony Music must show that Triller had the "right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016) (alterations and quotations omitted). "[A]n

obvious and direct financial interest may be established where infringing material *acts as a draw to attract subscribers* to a defendant's business, even if it is not the primary, or even a significant draw." *Id.* (emphasis added, alterations and quotations omitted).

Sony Music advances three theories of draw. First, the presence of Sony Music's sound recordings on the Triller App attracted users to the Triller App. More users could then be served more ads or purchase more premium content, to Triller's financial benefit. Second, the presence of Sony Music's sound recordings on the Triller App attracted content creators to the Triller App. More content creators would result in more videos, in connection to which Triller can serve more ads or charge for access to the videos. Third, the presence of Sony Music's sound recordings on the Triller App attracted investors to invest in Triller.

Several of the Requests deal directly with this investment theory of draw. In particular, Requests 19 (marketing materials provided to actual or potential investors), 20 (the timing and amount of investments in Triller), 21 (Triller's valuation), and 24 (Triller's ownership structure) will show how Triller advertised the presence of popular music (including Sony Music sound recordings) to actual or potential investors, that such marketing attracted investors and in what amounts, at what valuation, and basic information about Triller's corporate structure to understand the context and structure of the investments. All of this information is highly probative of the direct financial benefit Triller received from its unauthorized use of Sony Music sound recordings on the Triller app. Public reports indicate that Triller actively sought investment during the relevant period, as it has sought to go public, and that it raised hundreds of

millions of dollars in investments.[3] The extent to which the availability of Sony Music's recordings on the Triller App played a part in such marketing and investments is highly relevant.

***Triller's Answer regarding its ability to pay its debts and financial status***. In answering Sony Music's contract claim, Triller stated that "it has been unable to make payments to Plaintiffs under the 2022 Amendment for a variety of reasons," and that "Triller has also not been able to pay during May – August of 2022." Dkt. 25, ¶¶ 9, 58. In doing so, Triller has put directly at issue the truth, accuracy, and reliability of those factual assertions. Sony Music is entitled to documents to test these assertions, including through documents responsive to at least Requests 16 and 18.

## IV. Conclusion

Sony Music respectfully requests the Court hold a Rule 37.2 conference at the Court's earliest convenience to resolve the Parties' dispute regarding Sony Music's requests for Triller's financial information.

Respectfully submitted,

*/s/ Jeffrey M. Gould*
Jeffrey M. Gould
Matthew J. Oppenheim
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Tel.: (202) 621-9027

---

[3] *See, e.g.*, Mandy Dalugdug, *TikTok Rival Triller Acquires Influencer Marketing Firm Julius*, MUSIC BUSINESS WORLDWIDE (February 13, 2023), https://www.musicbusinessworldwide.com/after-missing-ipo-target-triller-acquires-influencer-marketing-firm-julius/.

matt@oandzlaw.com
jeff@oandzlaw.com

Andrew L. Guerra
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, Floor 19
New York, NY 10017
Tel: (212) 951-0122
andrew@oandzlaw.com

*Attorneys for Plaintiffs*