

**Oppenheim + Zebrak, LLP**

WASHINGTON – NEW YORK

Jeffrey M. Gould
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.851.4526
jeff@oandzlaw.com

**DELIVERED VIA ECF**

March 27, 2023

Honorable P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *Sony Music Entertainment, et al. v. Triller, Inc.*, 1:22-cv-7380 (PKC)

Your Honor:

> *[Handwritten endorsement:]* Plaintiff by letter motion filed March 27, 2023 and the Gould declaration of March 27, 2023 moves to strike defendant's answer and to enter a default judgment against it pursuant to Rule 37(b) and for attorney's fees and expenses pursuant to Rule 37(c). Defendant shall respond to the motion by April 5, 2023 and plaintiff may reply by April 12, 2023.
> SO ORDERED
> /s/ P. Kevin Castel USDJ
> 3-28-23

Defendant Triller Inc. ("Triller") has willfully refused to participate meaningfully in this case and in discovery, ignoring multiple court orders in the process. Accordingly, Plaintiffs Sony Music Entertainment, et al. ("Sony Music") respectfully request terminating sanctions for Triller's unexcused violation of the Court's March 9, 2023 Order. Dkt. 35 (the "Order"). The next conference before the Court is scheduled for May 8, 2023 at 10:30 a.m. Dkt. 28, ¶ 15.

After recognizing Triller's persistent failure to meet Court-ordered deadlines and failure to produce a single document despite the looming close of discovery (*see* Dkt. 30, 33), the Court recently ordered that "Triller shall produce *all* non-privileged, non-work product documents responsive to plaintiff's first request for production by March 21, 2023 or the case will be dismissed with prejudice." Dkt. 35 (emphasis added).[1]

Blatantly violating the Order, Triller produced *nothing*—zero documents—by March 21. Though Triller has provided a sliver of the ordered discovery since then and, true to its *modus operandi*, still offers promises of more to come, Triller's production remains woefully deficient. In total, Triller has produced a mere 51 documents comprising just 427 pages in response to all of Sony Music's document requests. Triller still has not produced major swaths of relevant discovery, including Triller's policies relating to copyright infringement, documents identifying the Sony Music works available on the Triller App after termination of the license, or user data regarding those works. And Triller has produced almost none of the financial-related discovery that triggered Sony Music's initial motion to compel and the Court's Order. The limited documents Triller did produce revealed for the very first time the full scope of Triller's infringement—that *more than 10,000* of Sony Music's copyrighted works remained available and live on Triller's service weeks after Triller's authorization to use them expired.

---

[1] Because Triller is the defendant and not the plaintiff in this action, Sony Music reads the Order as warning that in the event Triller violated the Order, terminating sanctions would enter *against Defendant Triller* with prejudice—rather than against Plaintiff Sony Music.

With discovery set to close in fourteen days on April 10, 2023, Sony Music has timely noticed several depositions to occur within the discovery period, including some this week. Taking those depositions without the critical documents Triller has failed to produce will materially prejudice Sony Music's ability to properly develop the case record and prosecute this case.

In the meantime, Triller "***has conceded liability under the contract***" (Dkt. 34, emphasis added), and the few documents Triller has produced unequivocally support Sony Music's copyright infringement claims. In sum, Triller has no defense to this action, refuses to meaningfully participate in it, yet continues to drive up litigation costs, and frivolously delay the inevitable consequences of its liability. By any measure, Triller's conduct has vexatiously proliferated this proceeding to Sony Music's detriment.

For the reasons discussed herein, Sony Music respectfully requests, pursuant to Rule 37(b) and the Court's inherent authority, that the Court enter default judgment against Triller, strike Triller's Answer, or impose other comparable terminating sanctions against Triller for its violation of the Court's March 9 Order, continued failure to participate in discovery, and vexatious protraction of this litigation despite conceding liability.[2]

## I. Background

### A. The Complaint

Sony Music asserts claims for breach of contract and copyright infringement against Triller, a social media app similar to TikTok that allows users to create videos using a library of popular music on Triller's website and app (the "Triller App"). After Triller failed to make millions of dollars of payments to Sony Music under a license agreement, Sony Music terminated the contract and has sued for breach and damages. Even after Sony Music terminated the license, Triller continued to use Sony Music's sound recordings without authorization on the Triller App. Triller's use of Sony Music's sound recordings after that termination renders it willfully liable for direct and secondary copyright infringement.

### B. History of the present motion and Triller's continued violations

On March 1, 2023, Sony Music filed a letter requesting a discovery conference regarding Triller's unjustified refusal to produce any financial information. Dkt. 30. After Triller failed to

---

[2] Given the Court's clear warning of terminating sanctions if Triller did not comply with the March 9 Order, Sony Music requests that the Court enter sanctions without the need for more formal motion papers. If the Court determines otherwise, Sony Music respectfully requests that the Court consider this letter a request, pursuant to Local Rule 37.2, for a pre-motion conference regarding Sony Music's motion for sanctions.

timely respond, Sony Music filed another letter informing the Court of Triller's extensive history of failing to meet Court deadlines, including (i) its failure to timely serve a response to the complaint and entry of default, (ii) failure to timely serve Rule 26(a)(1) Initial Disclosures, and (iii) failure to produce any documents in response to Plaintiffs' RFPs despite the impending close of discovery. Dkt. 33.

In response, the Court ordered Triller to "produce all non-privileged, non-work product documents responsive to plaintiff's first request for production by March 21, 2023." Dkt. 35. The Court warned Triller that failure to comply with its Order would result in case-terminating sanctions, with prejudice. *Id*.; *see supra* n.1. That same day, Triller's counsel assured the Court that it "will ensure compliance with all deadlines imposed by the Court in this matter going forward." Dkt. 34 at 1. Triller also "conceded liability under the contract" in the same letter. *Id.*

The threat of case-terminating sanctions had no effect on Triller. Its promise to the Court to comply with all future deadlines proved false, as Triller failed to produce any documents at all by March 21, 2023. Gould Decl. ¶ 3. Though Triller produced 49 documents early the next morning (March 22), the production contained none of the financial discovery that was the subject of Sony Music's motion to compel and lacked many categories of responsive documents. *Id.* ¶¶ 3-4; Ex. A at 1-2.

Later that same day, Sony Music emailed Triller, through counsel, noting Triller's violation of the Order and identifying major deficiencies in Triller's meager production. Ex. A at 1-2. Triller's counsel responded by stating that the production was ready on March 21 but was inadvertently not sent until after 5 a.m. EST on March 22. *Id.* at 1. Later that day (March 22), Triller produced two additional documents, bringing its total production to 51 documents and 427 pages. *See* Gould Decl. ¶¶ 3, 6.

The parties met-and-conferred on March 23 regarding Triller's discovery deficiencies and upcoming depositions that Sony Music had noticed for March 30, 31 and April 5. Gould Decl. ¶ 7. Triller's counsel indicated that the following day, March 24, Triller would produce an investor capitalization chart and identify Triller's Rule 30(b)(6) corporate designees. *Id.* ¶ 8. To date, Triller has done neither. *Id.* ¶ 9. Triller's counsel also indicated that he hoped, but could not promise, to complete Triller's production by March 28—one full week after the Court-ordered deadline. *Id.* ¶ 8. At no point prior to or after the March 21 discovery deadline did Triller's counsel seek Plaintiffs' or the Court's consent for an extension of time to comply with the Order. *Id.* ¶ 10.

Despite its limited belated productions, Triller's compliance with the Court's order remains woefully deficient. As documented in Sony's Music's March 22 email to Triller, Triller had failed to produce *any* of the following that the Court's March 21 production Order required:

- Documents evidencing Triller's tracking the use of Plaintiffs' works (RFP 6);

- Documents showing all of Plaintiffs' sound recordings that were available on the Triller app from August 8, 2022 to the present, and the number of times Plaintiffs' sound recordings were streamed or otherwise utilized during the same period of time (RFP 7);

- Documents sufficient to show Triller's Acceptable Use Policy, Terms of Service, Premium Content Policy, or any other policy applicable to Users (RFP 10);

- Documents and communications regarding Triller's policies and practices for monitoring, reviewing, inspecting, removing, or disabling access to any Sound Recording or video on the Triller App. (RFP 11);

- Internal summaries, reports, or data analyses regarding activity on the Triller App (RFP 13);

- Triller's Weekly and Monthly Reports required under the parties' license agreement (RFP 1 and 5);

- Public marketing materials utilized by Triller that reference the use of popular music on the Triller App (RFP 14); and

- Financial, investment, and valuation documents (RFP 16, 17, 18, 20, 21).

Ex. A at 1-2. Since then, Triller has produced only *two* documents—one investor PowerPoint deck that references the use of popular music (RFP 19) and one document showing Triller's ownership structure (RFP 24). Gould Decl. ¶ 6.

## II. Triller's violation of the Order and continued unexcused delays warrant terminating sanctions under Rule 37

The Court unequivocally warned Triller, in light of its persistent disregard for the Court's deadlines and looming close of discovery, that violation of the Court's March 9 Order would result in terminating sanctions, with prejudice. Dkt. 35. There can be no dispute that Triller violated the Order. It produced nothing by March 21 and the skimpy production that followed remains materially deficient.

Under Federal Rule of Civil Procedure 37(b)(2), "[i]f a party … fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders," including a range of sanctions up to and including "striking pleadings in whole or in part," or "rendering a default judgment against the disobedient party." *See* Rule 37(b)(2)(i) – (vii), Fed. R. Civ. P.

  Courts consider various factors when imposing Rule 37 sanctions, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citations omitted). "Because the text of the rule requires only that the district court's orders be 'just,' however, and because the district court has 'wide discretion in imposing sanctions under Rule 37,' these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions." *Id.* (internal citations omitted). Given this standard, a district court's decision to impose sanctions is reviewed for abuse of discretion. *Id.* at 143. Where, as here, the Court has warned of the precise sanction that will issue upon violation of an order, imposing that sanction for violation of such order is well within a court's discretion. *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) ("The severe sanction of dismissal with prejudice may be imposed … so long as a warning has been given that noncompliance can result in dismissal.")

  Here, Triller has offered no justification for its failure to comply with the Court's Order. Nor could it. Less than three weeks ago, Triller assured the Court that it would "compl[y] with all deadlines imposed by the Court in this matter going forward." Dkt. 34 at 1. Triller then immediately disregarded the very next deadline.

  Triller's false promises in this case are legion and "[t]he district court is free to consider the full record in the case in order to select the appropriate sanction." *Southern New England Tel. Co.*, 624 F.3d at 144 (internal quotations and citation omitted). Triller has forfeited its many opportunities to change its behavior:

- Triller promised to answer the Complaint by a long-extended deadline of its choosing but failed to do so, leading to entry of default, and an Answer filed two weeks later; *see* Dkt. 20 (consent extension), 24 (default), 25 (Answer);

- Triller promised to serve belated Initial Disclosures by a date of its choosing but failed to do so until nearly a month after the Court-ordered due date, and only after Plaintiffs threatened a motion, *see* Dkt. 24 at ¶ 4 (Case Management and Scheduling Order); 33-1 at ¶ 4 (Gould Decl.);

- Triller promised this Court on March 9 that it would comply with all forthcoming deadlines, then missed the very next one and still has not completed it production, *see* Dkt. 35; Gould Decl. ¶¶ 3-8; and

- Triller promised Plaintiffs that it would produce an investment capitalization chart and identify deposition designees last week, but still has not done so. Gould Decl. ¶¶ 8-9.

Against this history, Triller's violation of the Order can only be understood as due to "willfulness, bad faith, or [] fault," *Southern New England Tel. Co.*, 624 F.3d at 144, and, accordingly, a lesser sanction would not deter Triller or other parties from behaving similarly in this Court.  *See RLI Ins. Co. v. May Const. Co., Inc.*, 2011 WL 1197937, at *3 (S.D.N.Y. Mar. 22, 2011) (Castel, J.) ("The fact that defendant was warned that noncompliance would result in striking his answer and chose not to comply illustrates that lesser sanctions would be insufficient to remedy his failure.").  That Triller produced a handful of documents one day after the Court's deadline does not justify clemency.  Triller is a sophisticated corporate entity, represented by capable counsel.  This is not a case of a *pro se* or unsophisticated party simply misunderstanding the rules.

Triller's continued delays, failings, and non-compliance have substantially prejudiced Sony Music's ability to obtain discovery regarding Triller's operations, finances, and putative defense to the copyright claims—all essential information for proving Sony Music's claims.  Even if Triller completed its productions by March 28—and there is no reason to think Triller will do so—Plaintiffs would have *less than two weeks* to review Triller's complete production and depose all of Triller's witnesses.  Nor, without leave, could Sony Music serve additional written discovery within the current schedule based on documents Triller produces or information it discloses in depositions.

Finally, as Plaintiffs explained in the complaint, the 55 works that Sony Music included in its copyright claim were "illustrative and non-exhaustive exemplars" because "[t]he full scope of Triller's infringement is unknown, and Sony Music anticipates amending Exhibit A [to add works] based on information learned in discovery." Dkt. 13 at ¶ 19.  Predictably, documents Triller produced last week demonstrate that *more than 10,000* of Sony Music's works remained available and live on the Triller App weeks after Triller's authorization to use them expired, and even after Sony Music filed its complaint weeks later.  Sony Music's document requests required Triller to identify any such works, which Triller agreed to do but thus far has failed to provide.[3]  This information was due March 21 under the Order.  Sony Music has identified this deficiency and sought additional information from Triller regarding those works, and it believes in good faith that it may have a basis to add more than 10,000 additional works to its infringement claim—each of which may be eligible for an independent damage award.  *See* 17 U.S.C. § 504(c)(1) (statutory copyright damages awarded per work infringed).  Triller's delay in providing this discovery has already prejudiced Plaintiffs' ability to add these works because the deadline for amending the works in suit passed before Triller produced a single document.  *See*

---

[3] In response to RFP 7, Triller agreed that "Triller will produce documents showing all of Plaintiffs' sound recordings that were available on the Triller app from August 8, 2022 to the present and the number of times Plaintiffs' sound recordings were streamed or otherwise utilized during the same period of time."

Hon. P. Kevin Castel<br>
March 27, 2023<br>
Page 7 of 7

Dkt. 28, ¶ 3 (setting March 10, 2023 deadline for filing of amended Ex. A. to the Complaint).[4] By any measure, the prejudice to Sony Music caused by Triller's approach to this case is substantial.

### III. Conclusion

Pursuant to Rule 37(b), this Court's inherent authority, and the Court's clear warning to Triller in its March 9 Order, Sony Music respectfully requests that the Court enter a default judgment against Triller, strike Triller's Answer, or fashion other comparable terminating relief that results in entry of judgment for Sony Music on all claims.

Sony Music also requests, pursuant to Rule 37(c), that the Court order Triller to pay Sony Music's reasonable expenses, including attorney's fees, caused by Triller's violation of the Order and persistent failure to participate meaningfully in the case, in an amount to be presented to the Court for approval.

Respectfully submitted,

*/s/ Jeffrey M. Gould*

Jeffrey M. Gould
Matthew J. Oppenheim
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Tel.: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com

Andrew L. Guerra
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, Floor 19
New York, NY 10017
Tel: (212) 951-0122
andrew@oandzlaw.com

*Attorneys for Plaintiffs*

---

[4] Sony Music reserves the right to seek leave to add additional works to the case based on this newly disclosed information after Triller provides sufficient additional discovery to identify such works.

Case 1:22-cv-07380-PKC   Document 38-1   Filed 03/28/23   Page 8 of 13

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TRILLER, INC.,<br><br>    Defendant. | Case No. 22-cv-7380 (PKC) |

### DECLARATION OF JEFFREY M. GOULD
### IN SUPPORT OF PLAINTIFFS' MARCH 8, 2023 LETTER TO THE COURT

I, Jeffrey M. Gould, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner at Oppenheim + Zebrak, LLP ("O+Z"), which represents Plaintiffs Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Arista Records LLC, Provident Label Group LLC, Records Label, LLC, and Zomba Recording LLC (collectively "Sony Music" or "Plaintiffs") in this action. I make the statements herein based on personal knowledge and/or my review of the documents and information referenced herein. If called upon to do so, I am able to testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' March 27, 2023 Letter to the Court.

3. Triller, Inc. ("Triller") first produced documents in the above-captioned litigation on March 22, 2023 at 5:39 a.m. EDT. The production consisted of approximately 49 documents, comprising 401 pdf pages, one native excel file, and one native email document.

4.    None of the documents in Triller's first production were responsive to requests for production 16, 18, 19, 20, 21, and 24, which were the subject of Sony Music's March 1, 2023 letter to the Court.  Dkt. 30.

5.    Attached hereto as Exhibit A is a true and correct copy of an email chain between counsel for Triller and counsel for Sony Music dated March 22, 2023.

6.    On March 22, 2023 at 5:26 p.m. EDT, Triller made a second production of documents, consisting of two documents and 24 pages.  One of the documents in Triller's second production is responsive to RFP 19, and the other document is responsive to RFP 24.

7.    On March 23, 2023, counsel for Triller and Sony Music met-and-conferred regarding Triller's discovery deficiencies and depositions Sony Music had noticed for March 30, 31, and August 5.

8.    During the parties' meet-and-confer, Triller's counsel indicated that Triller would produce an investor capitalization chart and identify Triller's Rule 30(b)(6) corporate designees by the following day, March 24, 2023.  Triller's counsel further stated that he hoped, but could not promise, to complete Triller's production by March 28, 2023.

9.    As of the time of this filing, Triller has not produced an investor capitalization chart or identified Triller's 30(b)(6) corporate designees.

10.   As of the time of this filing, Triller's counsel has not requested Sony Music's consent to an extension of the Court's March 9, 2023 order.

Executed on this 27th day of March 2023 in Washington, D.C.

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Jeffrey M. Gould
　　　　　　　　　　　　　　　　　　　　　　　　　Jeffrey M. Gould

# Exhibit A

Case 1:22-cv-07380-PKC Document 37-2 Filed 03/27/23 Page 1 of 13

| | |
|---|---|
| **Subject:** | RE: Triller |
| **Date:** | Wednesday, March 22, 2023 at 4:31:53 PM Eastern Daylight Time |
| **From:** | Chris Vlahos |
| **To:** | Andrew Guerra |
| **CC:** | Jeff Gould |
| **Attachments:** | image001.png |

Andrew, I understood my assistant was sending out the discovery responses and document production, which I discovered had not happened at 4 am ct, and I immediately sent it to you.

2 pm tomorrow works. I will address your remaining points in the interim.

Thanks,

Chris

---

**From:** Andrew Guerra <Andrew@oandzlaw.com>
**Sent:** Wednesday, March 22, 2023 3:28 PM
**To:** Chris Vlahos <cvlahos@rlfllp.com>
**Cc:** Jeff Gould <Jeff@oandzlaw.com>
**Subject:** Re: Triller

Chris,

We have received your production of today, March 22, 2023, and write regarding several deficiencies in violation of the Court's March 9, 2023 Order.  ECF 34 (the "Order").

The Order required Triller to "produce all non-privileged, non-work product documents responsive to plaintiff's first request for production by March 21, 2023".  ECF 35.  Triller's production was not made until March 22 in violation of the Order.  As you know, Triller's failure to meet Court-ordered deadlines has been a consistent and recurring problem in the case.  And notwithstanding your assurance to the Court on March 9 that you "will ensure compliance with all deadlines imposed by the Court in this matter going forward" (ECF 34), Triller failed to comply with the very next deadline without prior notice or any apparent justification.

Triller's production also appears to be woefully deficient.  Below is a list of materials and the associated RFP that Triller indicated that it would produce, but which we have been unable to locate in your production:

- Weekly and Monthly Reports (RFP 1 and 5).
- Documents evidencing Triller's tracking the use of Plaintiffs' works (RFP 6).
- Documents showing all of Plaintiffs' sound recordings that were available on the Triller app from August 8, 2022 to the present and the number of times Plaintiffs' sound recordings were streamed or otherwise utilized during the same period of time (RFP 7).
- Documents sufficient to show Triller's Acceptable Use Policy, Terms of Service, Premium Content Policy, or any other policy applicable to Users (RFP 10).
- Documents and communications regarding Triller's policies and practices for monitoring, reviewing, inspecting, removing, or disabling access to any Sound Recording or video on the Triller App. (RFP 11).
- Internal summaries, reports, or data analyses regrading activity on the Triller App (RFP 13)
- Public marketing materials utilized by Triller that reference the use of popular music on the Triller App,

and marketing and investor materials that reference the use of popular music (RFP 14, 19).
- Financial, investment, and valuation documents (RFP 16, 17, 18, 20, 21, 24).

To the extent that you maintain any of the above were included in your March 22 production, please indicate the associated Bates numbers.

As for the deficiencies, please let us know whether and when you will supplement Triller's production. Discovery is set to close April 10 and we have noticed depositions for the coming weeks. The deficiencies in Triller's production materially prejudices Sony Music's ability to develop its case within the time permitted by the Court's schedule.

The Court required Triller to provide a log of any documents that Triller withheld on the basis of privilege or work product by the same date, which you have not provided. Please let us know today whether and when a privilege log is forthcoming, or whether you contend that no documents were withheld on privilege or work product grounds.

In light of the above deficiencies, Sony Music reserves all rights, including with respect to Triller's violations of the Order, and the timing and scheduling of forthcoming depositions and other discovery.

We are available to confer at 2 CT tomorrow on these issues and the issues you describe in your email. Please confirm that time works and I can circulate an invitation.

Regards,


Andrew L. Guerra
**Oppenheim + Zebrak, LLP**
461 Fifth Avenue, Floor 19
New York, NY 10017
212.951.0122 (direct)
andrew@oandzlaw.com | www.oandzlaw.com

_____

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

---

**From:** Chris Vlahos <cvlahos@rlfllp.com>
**Date:** Wednesday, March 22, 2023 at 4:17 PM
**To:** Andrew Guerra <Andrew@oandzlaw.com>
**Cc:** Jeff Gould <Jeff@oandzlaw.com>
**Subject:** Triller

Please let me know if you are available tomorrow or Friday to discuss settlement, written discovery and deposition discovery issues. I am generally available after 2 pm ct tomorrow and all day on Friday.

Thanks,

Chris

Chris Vlahos
**Ritholz Levy Fields LLP**
131 S. 11th Street
Nashville, TN 37206
Tel: 615.250.3939
cvlahos@rlfllp.com

